UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IMPAC UNIVERSITY, LLC, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-918 (ESH/JMF) |
| ) | |
| DISTANCE EDUCATION AND ) | |
| TRAINING COUNCIL, ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT DISTANCE EDUCATION AND TRAINING COUNCIL'S
RESPONSE TO PLAINTIFF IMPAC UNIVERSITY, LLC'S
NOTICE OF REPEATED VIOLATIONS OF COURT ORDER**

COMES NOW the Defendant, Distance Education and Training Council (DETC), by counsel, and files this Response to the "Notice of Repeated Violations of Court Order" filed by the Plaintiff, IMPAC University, LLC (IMPAC), in this matter.

PRELIMINARY STATEMENT

At its meeting on January 12, 2008, DETC's Accrediting Commission considered the account furnished by IMPAC University of why it had entrusted certain educational functions to Vietnam National University (VNU) without obtaining the requisite Commission approval. IMPAC was fully aware of the need for approval, having worked for months to develop a proposal that the Commission subsequently did not approve. Five months after the specific rejection, IMPAC nonetheless entered into the same contract with VNU. Confronted with having conducting an unauthorized, highly profitable operation for a year and a half in defiance of a Commission finding, IMPAC's contentions were not credible. The violation was clear, as were the efforts to hide it from DETC's view, and the school's attempt to excuse and explain failed to reach the level of

trust necessary for accreditation to work.   The Commission withdrew IMPAC's accreditation.

The school then opted to use DETC's reconsideration process, and the Commission convened again on February 29, 2008.  It conducted a hearing on the record with IMPAC representatives and their counsel present for the oral presentation portion of the three hour meeting.  By letter dated March 10, 2008, the Commission informed IMPAC that the decision to withdraw its accreditation had been affirmed.  As part of its duty to notify the general public of its decision, DETC also posted a notice of the withdrawal of IMPAC's accreditation (the Withdrawal Notice) on its website (www.detc.org).

IMPAC then sued, improperly filing in Florida.  To facilitate the orderly litigation of this matter, as part of an Order entered March 28, 2008, by the United States District Court for the Middle District of Florida, DETC agreed to maintain IMPAC's accreditation status temporarily until such time as the Court ruled on IMPAC's motion for preliminary injunction, and IMPAC agreed to cease its unauthorized operations in Vietnam.  DETC then removed the Withdrawal Notice from its website, replacing it with one stating that IMPAC's accreditation had been reinstated as of March 25 (the Reinstatement Notice).

The underlying activity leading to the "Notice" and this response happened when the vendor hosting DETC's website, IPower, decided that it had to transfer DETC's service to a different location.  IPower notified DETC that it would lose control of its website during the period of transition.  Unfortunately for DETC, this loss of control meant that it had no way of fixing the website when it lapsed back to an earlier version,

which it did on three occasions in May, resulting in calls from attorney to attorney to staff to vendor until things were righted. In each instance, DETC's counsel assured IMPAC's counsel that DETC, which gained no benefit whatever from this electronic switching, was doing everything it could to get the contractor to fix the problem.

The Reinstatement Notice ran from March 25 to May 19, 2008, without incident. Then came the IPower transfer activity and during a period of three days, May 19-22, the original Withdrawal Notice reappeared on DETC's website three times. Each time, as detailed herein, DETC contacted its website host and advised IMPAC of the situation and reasons for this error. IMPAC rejected DETC's good faith attempts to deal with this posting situation and filed its Notice with the Court.

The accusations and conclusions evince no real attempt to check whether there are occasions when website owners, such as DETC here, lose control of their web sites, as happened here. Because the vendor was transferring DETC's site location, the site was not "controlled by DETC", which had no logical reason to alter the posting in the first place. IMPAC falsely asserts that "a reasonable person can draw no other conclusion but that DETC's violations of the Order (referring to the reappearance of the older page from the cache) have been willful and knowing".

This action has its full share of "willful and knowing" violations of the truth, as well as of legal requirements such as those required by Rule 11, but IMPAC has been the perpetrator and not the victim of these violations.

Demands for damages and sanctions because a vendor's error led to brief areas of inaccurate status reporting are a travesty of what pleadings and motions should be about. Parties and their attorneys should not be permitted to so openly and cavalierly misuse

process so as to harass and drain the resources of the opponent. Had IMPAC done the underlying investigation that the Rules contemplate prior to making a filing with the Court, it would have found out the facts as confirmed by the IPower Declaration--the erroneous repostings occurred not because of clever scheming by DETC intended to harm IMPAC, but because of the much more benign explanation that IPower's migration of the website somehow caused the problem.

Indeed, IPower was able to put to rest numerous issues, when asked to do so. After some time and an investigation by IPower staff, IPower has provided DETC with the Declaration of David C. Bryson, IPower's General Counsel, a true copy of which is attached hereto as Exhibit 1, confirming the explanation that DETC had provided all along to IMPAC--the incidents occurred because of the migration of DETC's website and DETC took no actions to cause the reposting of the Withdrawal Notice—as follows:

1. IPower has hosted DETC's website since November 6, 2003. (IPower Declaration, at para.2);

2. On May 4, 2007, Endurance International Group, Inc. (Endurance), the current parent company of IPower, acquired IPower, and since that time, Endurance and IPower had been working to upgrade the platform on which the websites for which IPower was providing website hosting services are hosted. According to IPower, the new platform constituted a definite upgrade from the old platform, whose systems required enhancement. (IPower Declaration, at para. 3);

3. When IPower completed the work on the new platform, it began the migration process (described in detail in IPower Declaration, at para. 5), and DETC's website was one of the sites migrated by IPower from the old (or legacy) platform to the new platform

(IPower Declaration, at para. 4).  DETC's website was migrated on May 16, 2008 (IPower Declaration, at para. 6);

      4.  DETC first informed IPower that there were problems with its website, including the fact that outdated content was being displayed on the website, at 9 am on May 19, 2008 (IPower Declaration, at para. 8).  DETC later that afternoon informed IPower that one of the items of "outdated content" that was erroneously appearing on the website was the Withdrawal Notice, and DETC requested that the Withdrawal Notice be removed immediately (IPower Declaration, at para. 9).  At that time, IPower was performing work on DETC's website, which IPower recognizes may have prevented DETC from making any changes in content to the site.  (IPower Declaration, at para. 9);

      5.  IPower removed the Withdrawal Notice from DETC's website and replaced it with the Reinstatement Notice in the afternoon of May 19, 2008 (IPower Declaration, at para. 9);

      6.  DETC again informed IPower that the Withdrawal Notice had reappeared on its website on May 20, 2008, and directed that IPower remove the Withdrawal Notice and replace it with the Reinstatement Notice; IPower complied (IPower Declaration, at para. 10);

      7.  DETC again informed IPower that the Withdrawal Notice had reappeared on its website on May 22, 2008, and directed that IPower remove the Withdrawal Notice and replace it with the Reinstatement Notice; IPower complied (IPower Declaration, at para. 11);

      8.  At DETC's request, IPower conducted an investigation into how these three erroneous repostings occurred.  Although IPower has not ascertained the cause with

100% certainty, IPower believes that the incidents occurred as a result of the migration process. (IPower Declaration, at para. 13). IPower provides a more detailed explanation as to the basis for this belief in paragraphs 13 and 14 of its Declaration;

9. IPower can say with certainty that: DETC never requested that the Withdrawal Notice be reposted to its website; whenever the Withdrawal Notice did erroneously reappear, DETC contacted IPower and emphatically requested removal of the Withdrawal Notice and reposting of the Reinstatement Notice; there is no evidence in IPower's logs or files, nor is there any basis for concluding, that the erroneous repostings of the Withdrawal Notice resulted from any action by DETC (IPower Declaration, at para. 15).

Paragraphs 1 through 9 above set forth the only "facts" presented to the Court on this issue. DETC in fact had no control over the three events in which the Withdrawal Notice was erroneously reposted, but took all steps to correct the problems when discovered. This conclusion is based on an investigation into the underlying causes of the subject incidents. However, anyone remotely familiar with Internet technology, anyone who has ever sat down at a Personal Computer and surfed this medium, would surely acknowledge the sometimes inexplicable vicissitudes of this complex technology that often behaves randomly, with a "mind of its own." IMPAC's counsel would somehow have the Court believe that all Internet technology is logical, predictable and completely under the control of a website owner, when such is not the case.

A vendor caused an earlier but removed posting to reappear on a website, and a totally innocent party is forced to expend yet more resources to respond to wholly baseless accusations. Moreover, IMPAC, through its attorneys, were made well aware of

the cause of the incidents and that DETC was making efforts to secure material from its vendor to conclusively prove where and why the error occurred. This proof is appended, as IMPAC surely expected it would be. But rather than waiting for this proof or contacting the vendor itself to confirm DETC's explanation, IMPAC raced to file a pointless Notice bristling with threats. The pretense that IMPAC truly believes DETC deliberately wronged it through electronic manipulation of its website is as unbelievable as the allegations in its case in chief.

Based on the above, DETC believes that this is an instance where actions against one abusing the judicial process, such as sanctions and penalties, are appropriate. DETC did not willfully and knowingly violate any Court Order issued in this proceeding and had nothing to do with the unfortunate situation involving the repostings of the withdrawal notice.

DISTANCE EDUCATION AND
TRAINING COUNCIL
By Counsel

LUMAN, LANGE, THOMAS &
McMULLEN, LLP

By: s/ Gene C. Lange/
Gene C. Lange
glange@lltmlaw.com
Sean P. McMullen
spmcmullen@lltmlaw.com
1660 L Street, NW, Suite 506
Washington, DC 20036
Telephone: (202) 463-1260
Facsimile: (202) 463-6328
Counsel for Defendant, Distance Education
and Training Council

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 26, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Daniel D. Prichard
dprichard@dowlohnes.com

Leslie H. Wiesenfelder
lwiesen@dowlohnes.com

                                                s/Gene C. Lange/
                                                Gene C. Lange
                                                glange@lltmlaw.com
                                                LUMAN, LANGE, THOMAS & McMULLEN, LLP
                                                1660 L Street, NW, Suite 506
                                                Washington, DC 20036
                                                Telephone: (202) 463-1260
                                                Facsimile: (202) 463-6328
                                                Counsel for Defendant, Distance Education and Training Council

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IMPAC UNIVERSITY, LLC,<br>Plaintiff,<br><br>v.<br><br>DISTANCE EDUCATION AND<br>TRAINING COUNCIL,<br>Defendant. | )<br>)<br>)<br>) Civil Action No. 08-918 (ESH/JMF)<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF David C. Bryson.**

COMES NOW the undersigned, David C. Bryson, and states under oath as follows:

1. My name is David C. Bryson. I am over the age of majority, and I suffer under no disability. I give this Declaration based on my personal knowledge and on my own free will for use in the above-captioned lawsuit, and for all other purposes allowed by law.

2. I am the Vice President and General Counsel of The Endurance International Group, Inc. (Endurance), which is the parent company of IPower, Inc. (IPower). I am also General Counsel of IPower, a position I have held since May 4, 2007, the date on which Endurance acquired IPower. IPower provides services to customers that include, inter alia, web site hosting services. Through my position with IPower, I am aware of the fact that the Distance Education and Training Council (DETC) is a customer of IPower, and that, based on IPower's records, IPower has hosted DETC's web site since November 6, 2003. DETC's IPower User Name is: "ipw.detc". Through my position



with IPower, I am also personally familiar with certain occurrences related to DETC's web site during the period of time from May 16, 2008, and May 22, 2008, with regard to the inadvertent reappearances of an outdated message on DETC's web site during that time period.

3. Since May 4, 2007, when Endurance acquired IPower, Endurance and IPower have been working to upgrade the platform on which the web sites for which IPower provides hosting services are hosted. The new platform involved the use of newer, more sophisticated equipment and architecture, improved billing and customer support systems, as well as enhanced security, performance, and other features, and in my view constituted a definite upgrade from the old platform, whose system needed enhancement.

4. When IPower completed the work on the new platform, it began the "migration" process, which is how customers are moved from the old platform (sometimes referred to as the "legacy" platform) to the new platform. Following completion of the migration, the old platform was taken off line at or around June 30, 2008. DETC's web site was one of the many web sites that IPower migrated to this new platform.

5. In general terms, the migration process requires copying the web files, email and other data and features, which comprise a customer's web site and web hosting account, and moving them onto, and integrating them into, the servers and software in the new platform. Once the customer web site has been replicated on the new platform, it goes through a quality control process intended to confirm that the web site will perform effectively on the new platform. During this period, the web files exist on both the new and old platforms, and it is possible that updating the web site on the legacy side, would



2

not cause an automatic update of the records on the new platform, until such time as they are "synched up", i.e., made the same on both platforms. Typically, a customer web site is "flipped" from the old platform to the new platform upon completion of quality control. At that time, generally speaking, the web files are updated (synched up) from the old platform to the new to assure that the new platform contains the most current version of the web files and other data, following which the web site is fully migrated and begins to be "served" from the new platform.

6.     IPower informed DETC that its web site had to be migrated to the new platform on or before May 19, 2008. IPower also informed DETC on Friday, May 16, 2008 that the migration might take up to 24 hours.

7.     According to the logs that I have reviewed related to DETC's web site, IPower performed the migration of DETC's web site beginning at 8:57 AM (EDT) on Friday, May 16, 2008. At that time, based on my review of the customer contact history for this account, IPower did not appear to have any indication that there was a problem with the migration of this account.

8.     IPower's records show that, on Monday, May 19, 2008, at approximately 9:00 AM (EDT), a customer contact at DETC named Rachel (who I subsequently found out is Rachel Scheer, a staff member at DETC) contacted IPower's customer service center to inform IPower that there was a problem with the DETC web site database. At that time, I understand that DETC brought to IPower's attention two issues: first, that the search function of the web site was inoperable; and second, that the web site appeared to display



3

content that appeared "outdated" and did not reflect additions, changes and modifications that had been made to the site's content for a period of time prior to the migration.

9. Later that afternoon (May 19), DETC contacted IPower to inform us that a statement that had previously been removed from its web site (the March 10 posting) had reappeared on the site, and that that notice had to be removed immediately. At that point, as I understand it, IPower was working on DETC's web site, and DETC may not have had the ability to change the site's content itself on both platforms. Accordingly, IPower representatives removed the March 10 posting, and replaced it with one that DETC had informed IPower was the correct current posting (the March 25 posting).

10. On Tuesday, May 20, DETC again informed IPower that the same March 10 posting, that had reappeared and subsequently been removed on May 19, had reappeared again on its web site and that it had to be removed immediately. IPower again removed the March 10 posting and replaced it with the March 25 posting.

11. On Thursday, May 22, 2008, DETC informed IPower once again that the March 10 posting had reappeared on the site, and IPower once again took steps to remove the March 10 posting and replace it with the March 25 posting.

12. To my knowledge, no further incidents involving the reappearance of the March 10 posting have occurred since May 22, 2008.

13. IPower conducted an investigation into how the March 10 posting reappeared on the DETC web site on those three occasions, To date, IPower has not been able to ascertain the cause with 100% certainty. However, it does appear that the incidents occurred as a result of the migration process. We believe that the site may have flipped

4

back and forth on several occasions between "new platform" and "legacy", at a time when the content was different between the two — the new platform had the current March 25 posting; the legacy had the outdated March 10 posting. Apparently, when the March 10 posting first erroneously appeared on May 19, the initial correction was made on the new platform version.

14. It appears that, for some reason, after the DETC web site was initially migrated from the legacy version, the process (which is called the "wheel" process) by which IPower launches sites which pass IPower's migration Quality Control onto the new platform from which the site and the content thereon are accessible through the Internet, was repeated several times. It appears that the "wheel" copied over the old site numerous times after the migration (i.e. a wheel action was run), thus placing the old copy of the site on the new platform. As a general matter, when the "wheel" copies web files from legacy, it either overwrites what is on the new platform or copies the newest version. This process resulted in placing the wrong copy on the new platform every time, subsequently after the 16th. IPower believes that the additional actions during these "wheel" processes may be the root cause of these old copies showing up again and again.

15. In addition, to my knowledge, DETC never requested that the outdated March 10 Notice be re-posted on its web site; to the contrary, whenever the March 10 Notice reappeared, DETC contacted IPower and emphatically requested removal of that Notice. Further, we have reviewed our logs and files and have found no evidence or basis for concluding that the three reappearances of the March 10 posting resulted from any action of DETC.



Pursuant to 29 USC Sec. 1746, I declare under penalty of perjury that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NAUGHT

Executed this 11th day of August, 2008.

_____
David C. Bryson

General Counsel of IPower, Inc.